1
2
3
4
5
6

Aaron S. Jacobs (Cal. State Bar No. 214953)
ajacobs@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000

Attorneys for Plaintiffs
INTELLECTUAL VENTURES I LLC and
INTELLECTUAL VENTURES II LLC

7

8

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

9
10

In re SUBPOENAS OF QUALCOMM
INCORPORATED

MISC NO. ___'25CV0231 H ___ JLB___

11
12
13
14
15
16
17

INTELLECTUAL VENTURES I LLC
and
INTELLECTUAL VENTURES II LLC,

     Plaintiffs,

v.

ZEBRA TECHNOLOGIES CORPORATION,

     Defendant.

[Action pending in the Western District of
Texas, No. 6:23-cv-00292-ADA]

18
19
20
21
22
23
24

INTELLECTUAL VENTURES I LLC
and
INTELLECTUAL VENTURES II LLC,

     Plaintiffs,

v.

LENOVO GROUP LIMITED,

     Defendant.

[Action pending in the Western District of
Texas, No. 6:23-cv-00307-ADA]

25
26

**PLAINTIFFS' MOTION TO ENFORCE SUBPOENAS SERVED ON
THIRD-PARTY QUALCOMM INCORPORATED**

27
28

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that as soon as counsel may be heard, Plaintiffs Intellectual

3    Ventures I LLC and Intellectual Ventures II LLC (collectively "IV") will and hereby move this

4    Court pursuant to Federal Rules of Civil Procedure Rule 45(d)(2)(B)(i) for an order compelling

5    Qualcomm Incorporated ("Qualcomm") to provide one or more witnesses for deposition and to

6    produce source code.

7    This filing relates to two actions currently pending in the U.S. District Court for the Western

8    District of Texas:

9    *Intellectual Ventures I LLC v. Zebra Techs. Corp.*, No. 6:23-cv-00292-ADA (W.D. Tex.)

10    *Intellectual Ventures I LLC v. Lenovo Grp. Ltd.*, No. 6:23-cv-00307-ADA (W.D. Tex.)

11    In particular, this filing relates to subpoenas issued by that court that were served on Qualcomm

12    more than six months ago.  Qualcomm has its principal place of business in the Southern District of

13    California.

14    This Motion is based upon the instant Motion, the accompanying Memorandum of Points

15    and Authorities, the Declaration of Aaron S. Jacobs and the Exhibits attached thereto, and any other

16    matters the Court may deem appropriate.

17

18    Dated: January 31, 2025                    Respectfully submitted,

19

20    /s/ *Aaron S. Jacobs*
      Aaron S. Jacobs (Cal. State Bar No. 214953)
21    ajacobs@princelobel.com
      **PRINCE LOBEL TYE LLP**
22    One International Place, Suite 3700
      Boston, MA 02110
23    Tel: (617) 456-8000

24    Attorneys for Plaintiffs

25

26

27

28

Aaron S. Jacobs (Cal. State Bar No. 214953)
ajacobs@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000

Attorneys for Plaintiffs
INTELLECTUAL VENTURES I LLC and
INTELLECTUAL VENTURES II LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SUBPOENAS OF QUALCOMM INCORPORATED | **MISC NO. _____** |
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>ZEBRA TECHNOLOGIES CORPORATION,<br><br>        Defendant. | [Action pending in the Western District of Texas, No. 6:23-cv-00292-ADA] |
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>LENOVO GROUP LIMITED,<br><br>        Defendant. | [Action pending in the Western District of Texas, No. 6:23-cv-00307-ADA] |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO ENFORCE SUBPOENAS SERVED ON
THIRD-PARTY QUALCOMM INCORPORATED**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................................1

II.   BACKGROUND ............................................................................................1

    A.    The parties to the underlying actions. ...............................................1

        1.    Intellectual Ventures. ............................................................1

        2.    Zebra. .....................................................................................2

        3.    Lenovo Group Limited. .........................................................2

    B.    Third-party Qualcomm. .....................................................................2

    C.    The underlying actions.......................................................................3

    D.    On July 17, 2024, IV subpoenaed Qualcomm for depositions and documents, and IV thereafter diligently sought this discovery....................................3

    E.    Qualcomm's recalcitrance forced the parties in both cases to seek an extension of the discovery deadlines. ........................................5

    F.    Qualcomm continued to delay the depositions. ......................................6

    G.    Despite finally providing a deadline for the depositions, Qualcomm continued to play games with deposition logistics, obstructed the depositions and underprepared its witnesses........................................6

    H.    Qualcomm's continued recalcitrance forced the parties in both cases to seek a *second* extension of the discovery deadlines. .........................................10

    I.    Qualcomm has still not produced all of the relevant source code. ........................10

    J.    Qualcomm's continued recalcitrance forced the parties in both cases to seek a *third* extension of the discovery deadlines...........................................12

III.  THE DISCOVERY REQUESTS AT ISSUE ................................................12

IV.   ARGUMENT ................................................................................................13

V.    CONCLUSION..............................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3    *Bofi Fed. Bank v. Erhart*,
        2016 WL 1644726 (S.D. Cal. Apr. 26, 2016)..........................................13
4
    *Gonzales v. Google, Inc.*,
5        234 F.R.D. 674 (N. D. Cal. 2006)............................................................14

6    *McKeon v. Cent. Valley Cmty. Sports Found.*,
        2019 WL 1208986 (E.D. Cal. Mar. 14, 2019)........................................13
7
    *Truswal Sys. Corp. v. Hydro-Air Engineering, Inc.*,
8        813 F.2d 1206 (Fed. Cir. 1987) ..............................................................14

9    *Wi-Lan Inc. v. Research in Motion Corp.*,
        2010 WL 2998850 (S.D. Cal. July 28, 2010) ........................................13

10
**Other Authorities**

11   Fed. R. Civ. P. 26..........................................................................................13

12   Fed. R. Civ. P. 26(b)(1)................................................................................13

     Fed. R. Civ. P. 45..........................................................................................13
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively "IV") move this Court pursuant to Federal Rules of Civil Procedure Rule 45(d)(2)(B)(i) for an order compelling Qualcomm Incorporated ("Qualcomm") to provide one or more witnesses for deposition and to produce source code.

## I.   INTRODUCTION

The instant Motion is an example of *res ipsa loquitur*:  The thing speaks for itself.  As of the filing date, IV subpoenaed Qualcomm six-and-one-half months ago and Qualcomm has still not fully complied with its obligations.  The parties in the underlying cases had to go to the Western District of Texas three times (so far) to request extensions due to Qualcomm's foot dragging.  The first time, the parties requested an extension of all deadlines, pushing them back about two-and-one-half months.  In the second extension, the parties had to create a separate, extended deadline for third-party discovery.  And in the about-to-be-filed third extension, the parties are asking to push back all deadlines by two months, again because Qualcomm has not complied with the subpoenas.

It took Qualcomm six months to produce any witnesses at all.  As will be discussed below, these witnesses were (at best) underprepared.  Indeed, even Qualcomm acknowledges that another witness is needed.  But, Qualcomm refuses to provide a date beyond, effectively, "sometime after the second extended deadline," which forced the third extension.  Neither has Qualcomm produced all of the source code and it refuses to say when it will complete its "rolling production" beyond, again, "sometime after the second extended deadline."  Indeed, Qualcomm has not even produced the (just) two files it used to prepare one of its deposition witnesses.

There is a chance that, faced with this Motion, Qualcomm will (finally) find itself able to comply with the subpoenas before the Court rules on the matter.  But, given the history in this matter, IV regrettably could not take that chance—a court order is needed.

## II.   BACKGROUND

### A.   The parties to the underlying actions.

#### 1.   Intellectual Ventures.

The IV entities are Delaware limited liability companies with their principal place of business in Bellevue, Washington.  Intellectual Ventures Management, LLC ("IVM") was founded

1  in 2000.  IVM fosters inventions and facilitates the filing of patent applications for those

2  inventions; collaborates with others to develop and patent inventions; and acquires and licenses

3  patents from individual inventors, universities, corporations, and other institutions.  A significant

4  aspect of IVM's business is managing the plaintiffs in this case.

5        One founder of IVM is Nathan Myhrvold, who worked at Microsoft from 1986 until 2000

6  in a variety of executive positions, culminating in his appointment as the company's first Chief

7  Technology Officer ("CTO") in 1996.  While at Microsoft, Dr. Myhrvold founded Microsoft

8  Research in 1991 and was one of the world's foremost software experts.  Between 1986 and 2000,

9  Microsoft became the world's largest technology company.  Under Dr. Myhrvold's leadership,

10  IVM acquired thousands of patents covering many important inventions of the Internet era,

11  including many pertaining to the networked computers that comprise the Internet.  Many of these

12  inventions coincided with Dr. Myhrvold's successful tenure at Microsoft.  *See* Ex. 1 ¶¶ 1-2, 9-11.[1]

13        **2.**      **Zebra.**

14        Defendant Zebra Technologies Corporation ("Zebra") is a U.S.-based mobile computing

15  company.  It manufactures marking, racking and computer printing devices.  *See generally id.*

16        **3.**      **Lenovo Group Limited.**

17        Defendant Lenovo Group Limited ("LGL") is the parent company of a multinational

18  conglomerate that operates under the name "Lenovo" and refers to itself and its subsidiaries as the

19  "Group."  LGL purports to be a US$60 billion Fortune Global 500 company serving customers in

20  180 markets around the world, including within the U.S. where it is a leading manufacturer and

21  seller of laptop computers, desktop computers, smartphones, and tablets.  *See generally* Ex. 2.

22        **B.**      **Third-party Qualcomm.**

23        Qualcomm is a U.S.-based multinational corporation headquartered in San Diego,

24  California.  Among other things, it manufactures semiconductors, software and services related to

25  wireless technologies.  Qualcomm's products include the chipsets that reside at the heart of each of

26  the LGL and Zebra accused products.

27

28  [1]     All Exhibits referenced herein are attached to the Declaration of Aaron S. Jacobs ("Jacobs Decl.").

### C. The underlying actions.

On April 20, 2023, IV sued Zebra for infringement of U.S. Patent Nos. 7,623,439 ("the '439 patent") and 7,646,835 ("the '835 patent").  Ex. 1.  Qualcomm's processors are central to the accused functionalities with respect to both patents.  *See, e.g.*, *id.* ¶¶ 23, 40, 58, 61, 63-71.

On April 26, 2023, IV sued LGL for infringement of the '439 and '835 patents, as well as U.S. Patent Nos. 7,324,140 ("the '140 patent"), 8,474,016 ("the '016 patent") and 7,089,443 ("the '443 patent").  Ex. 2.  Qualcomm's processors are central to the accused functionalities with respect to the '439, '835 and '443 patents.  *See, e.g.*, *id.* ¶¶ 38, 110, 149, 152-162.

Per the Western District of Texas's procedures, fact discovery in both cases opened about one year later, on April 10, 2024.  Discovery was originally set to close less than seven months later, on November 5, 2024.  *E.g.*, 6:23-cv-00292-ADA, Dkt. No. 26 (W.D. Tex. Aug. 24, 2023).

### D. On July 17, 2024, IV subpoenaed Qualcomm for depositions and documents, and IV thereafter diligently sought this discovery.

Six-and-one-half months ago, on July 17, 2024, IV served Qualcomm with subpoenas for depositions and documents, including source code, in both cases.  Exs. 3-6; *see also* Ex. 7 at 25 (July 19, 2024 at 3:37 PM) (accepting service).  Qualcomm served responses on July 26, 2024.  Exs. 8-9; *see also, e.g.*, Ex. 10 at 5 (email of July 26, 2024 at 7:27 PM).

Six months ago, on July 31, 2024, IV's counsel reached out to Qualcomm's counsel begin discussions regarding Qualcomm's responses, Qualcomm's anticipated production and the depositions.  *See id.* at 1-5 (emails of July 31, 2024 at 5:49 AM, to Aug. 11, 2024 at 10:58 PM).[2]  Counsel for IV and Qualcomm met and conferred by email and telephone.  *Id.*  Based upon this process, IV served narrowed document requests on September 3, 2024.  Exs. 11-12; *see* Ex. 10 at 25 (email of Sept. 3, 2024 at 3:10 PM).

Despite the initial appearance of cooperation, Qualcomm engaged in a series of unfortunate and unnecessary delay tactics.

---

[2]      Just today, counsel for Qualcomm alleged that "███████████████████████████████ ████████████████████" Ex. 16 at 2 (email of Jan. 31, 2025 at 12:04 AM).  This is false.  *See, e.g.*, Ex. 10 at 5 (email of July 31, 2024 at 8:54 AM) (██████████████████████████████████████████████████████████████████); *id.* at 4-5 (email of Aug. 5, 2024 at 10:49 AM) (██ ████████████████████████████).

For example, Qualcomm insisted that it would not produce anything until IV (the plaintiff) provided Qualcomm with a complete list of *Qualcomm's* internal part numbers for the identified processors. Ex. 10 at 2 (email of Aug. 11, 2024 at 10:58 PM) (██████████████████ ██████████████████████████). In so doing, Qualcomm's counsel (to be generous) misstated the relationship between the internal names and trade names of those processors. As will be discussed, this tactic needlessly burned time.

Stepping back a bit, IV's narrowed subpoena to (for example) Zebra identified the Qualcomm Snapdragon Processors as including:

  a.  Qualcomm Snapdragon 730G Octa-Core Processor

  b.  Qualcomm Snapdragon SC7180

  . . .

  bb.  Qualcomm Snapdragon SM4350

Ex. 11 at 1-2. Counsel for Qualcomm alleged that this information was insufficient for Qualcomm to narrow down its own products:

████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████

Ex. 7 (email of Sept. 9, 2024 at 2:37 PM); *see also, e.g.*, *id.* at 18 (email of Sept. 16, 2024 at 5:07). In short, Qualcomm asserted that each of the "marketing names" (read: public names) associated with Qualcomm's products covered *multiple* chip product names (read: internal part numbers), and Qualcomm refused to provide *any* information until IV (the plaintiff) informed Qualcomm what Qualcomm's own, internal chip product names were.

Despite repeatedly insisting that it could not do so without IV's assistance, Qualcomm's counsel eventually admitted that Qualcomm could correlate the marketing names with the chip product names. And, Qualcomm admitted that there was a one-to-one match between the two names. Indeed, Qualcomm's counsel provided a chart to this very effect. *Id.* at 10-11 (email of Sept. 26, 2024 at 4:08 PM) (Qualcomm's counsel: ████████████████████████████ ████████████████████████████); *see also id.* at 10 (email of September 27,

2024 at 5:57 AM) (IV's counsel: ████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████). This
bears repeating:  After almost two months of refusing to correlate the marketing names with the
internal chip names, and also insisting that there were multiple internal chip names for each
marketing name, Qualcomm admitted that it could correlate chip product names to marketing
names on a one-to-one basis.[3]

      And yet, Qualcomm continued to drag its feet on document production.  *See, e.g.*, *id.* at 3
(email of Oct. 3, 2024 at 7:02 PM) ("████████████████████████████████████████
██████████████████████████████████); *id.* at 2 (email of Oct. 11, 2024 at 12:36
PM) (██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████).  Those (incomplete) documents began to be produced in mid-
October 2024, but still no depositions and source code were on the horizon.

     **E.**    **Qualcomm's recalcitrance forced the parties in both cases to seek
an extension of the discovery deadlines.**

      Based, in large part, on Qualcomm's intransigence, the parties in both cases sought an
extension of the case deadlines, pushing discovery back from November 5, 2024, to January 23,
2025.  Ex. 14 at 1 ("[M]any of the disputed material issues in this litigation revolve around and
depend upon discovery the parties must secure from third-party suppliers," including in particular

---

[3]     On a related note, counsel for Qualcomm recently complained that even though the cases
were filed in April 2023, "████████████████████████████████████████████
██████████████████████" Ex. 16 at 8 (email of Jan. 28, 2025 at 7:57 PM).  This was a
quixotic comment for several reasons.  First, fact discovery did not open until April *2024*.  Second,
even if IV had served the subpoenas on Qualcomm on the day discovery opened, Qualcomm's
current delay would still would have blown past "████████████████████" Third, given
Qualcomm's (misleading) tactic of insisting that IV obtain from the defendants the *Qualcomm
internal* parts numbers before Qualcomm would respond, the parties and Qualcomm would still be
in the same situation as we are today; after all, Qualcomm would have needlessly delayed things in
the same fashion until the defendants produced their information in discovery.

Qualcomm).  The court granted these requests.  *E.g.*, 6:23-cv-00292-ADA, Dkt. No. 69 (W.D. Tex. Oct. 22, 2024).

> **F.      Qualcomm continued to delay the depositions.**

On December 4, 2024, counsel for IV asked for dates for the Qualcomm deposition.  Ex. 15 at 4 (email of Dec. 4, 2024 at 12:03 PM).  Four-and-one-half months after IV served the subpoenas—and a month after the original discovery deadline—counsel for Qualcomm responded that "█████████████████████████████████████████████████████████ █████████████" *Id.* at 2 (email of Dec. 6, 2024 at 9:42 PM).  On December 16, 2024, with barely one month left in—already extended—discovery, Qualcomm informed IV that Qualcomm would likely not provide a witness for deposition before the close of discovery, which was still more than five weeks away.  *Id.* at 1-2 (email of Dec. 16, 2024 at 12:35 PM) (██████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ███████).

At this point, IV had no choice but to threaten to file a motion to compel with this Court.

Counsel for IV and Qualcomm met and conferred on December 23, 2024.  Ex. 16 at 32 (email of Dec. 23, 2024 at 3:23 PM).  After further back and forth via email, on December 24, 2024, Qualcomm agreed to produce witnesses for deposition "████████████████" on a narrowed set of topics.  *Id.* at 29-32.  So, IV agreed to hold off filing a motion to compel.  In retrospect, it is now evident that IV should have filed the Motion then.

> **G.      Despite finally providing a deadline for the depositions, Qualcomm continued to play games with deposition logistics, obstructed the depositions and underprepared its witnesses.**

On December 30, 2024, counsel for IV reached out to counsel for Qualcomm:  "████████ █████████████████████████████████████████████████████████ █████████████" *Id.* at 29 (email of Dec. 30, 2024 at 9:43 AM).  Qualcomm refused to provide any information.  *Id.* (email of Dec. 31, 2024 at 7:58 PM).

Counsel for IV asked again on January 2, 2025.  *Id.* at 27-28 (email of Jan. 2, 2025 at 7:22 AM).  Qualcomm again refused to provide any information beyond, effectively, "by January 15,"

*id.* at 26-27 (email of Jan. 3, 2025 at 6:29 PM).  Finally, on January 6, counsel for Qualcomm informed IV that the witnesses for deposition would be produced on the last possible day, January 15, starting at 9:00 AM PT.  *Id.* at 23 (email of Jan. 6, 2025 at 9:15 PM).

Unfortunately, Qualcomm still did not provide the names of the witnesses.  So, counsel for IV asked for this information again on January 8.  *Id.* at 22-23 (email of Jan. 8, 2025 at 10:44 AM).  Qualcomm did not respond to the request.

On January 14, at 11:54 PM—literally six minutes before the day of the deposition—counsel for Qualcomm sent an email to counsel for IV to inform IV that there would be three separate witnesses.  *Id.* at 19 (email of Jan. 14, 2025 at 11:54 PM).[4]  But still no names.

The three sequential depositions took place via a Zoom conference on January 15, 2025.  Qualcomm's outside and in-house counsel attended the depositions in person, while the parties' counsel attended remotely.  Although the three witnesses had been prepared one or more weeks before January 15, the names of the witnesses were not disclosed until each of the sequential depositions began.  Ex. 17 at 10:3-11, 11:17-15:18; Ex. 18 at 10:24-11:19; Ex. 19 at 11:18-23.

Despite the above-mentioned preparations, Qualcomm's witnesses were uninformed and unprepared for their roles as 30(b)(6) deponents.  For example, Farrukh Aquil was Qualcomm's designee—in Qualcomm's counsel's own words—on the topics of "████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████" Ex. 19 at 9:17-23.  Yet, ████████████████████████████████████

████████████████████████.  *Id.* at 52:17-53:7.

Amir Vajid was Qualcomm's designee—in Qualcomm's counsel's own words—on the topics of "████████████████████████████████████████████

████████████████████████████████████████████████████

_____

[4]    The 11:54 PM email was, presumably, sent to give Qualcomm's counsel the ability to say with a (vaguely) straight face that they provided this information to IV's counsel "the day before the deposition."



1  ████████████████████████████████████████████████████████

2  ████████" Ex. 18 at 8:21-9:3. ███████████████████████

3  ██████ *Id.* at 16:18-20.[5] ██████████████████ *Id.* at 17:1-8, 26:3-19.

4  ███████████████████████████████████████████ *Id.* at

5  26:20-23. ████████████████████████████████████████████████

6  ████████ *Id.* at 53:8-20.  To the extent he answered the questions posed, his answers were often

7  circular and nonsensical.  *See, e.g.*, *id.* at 14:1-16:14, 30:2-32:24, 33:24-35:23.  For example, e███

8  ████████████████████████████████████████████████████████

9  ███████████████████, *id.* at 12:11-16; ███████████████████████

10 ████████████████, *id.* at 23:19-24:3; █████████████████████

11 ██████████████████, *id.* at 21:8-22.  The following exchange is illustrative:

12  █       ████████████████████████████████

13  █       ███████████████████████████████████

14  █       █████████████████████████████████

15  █       ███████████████████████████████

16  ██████████████      ██████████████

17  ██████████████████████████████████████

18 ████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ███████████████████ This cannot be squared with the last-quoted sentence above.

21      Although—as noted above—Mr. Vajid was also Qualcomm's designee for "███████

22 ████████████████████████████████████████████

23

24

25  ─────────────────────
    [5]      Mr. Vajid was shown Qualcomm documents during his deposition, for example, Exhibit 1.

26 Ex. 18 at 19:10-25 (introducing Exhibit 1).  Mr. Vajid █████████████████████████████████

27 Kryo Silver. [¶] I see that in the document. . . . [¶] I'm seeing this document for the first time."  *Id.*

28 at 22:19-23:7; *see also id.* at 45:3-21 ████████████████████████████████

1 ████████████████████████████████████████████████████

2 ████ *Id.* at 45:4-17, 46:1-50:15.

3     Qualcomm's counsel's actions during these depositions were equally unhelpful.  For

4 example, Qualcomm's counsel repeatedly violated the Western District of Texas's Local Rule CV-

5 30(b), which probits all objections other than "leading" or "form," and explicitly states:  "An

6 attorney shall not, in the presence of a deponent, make objections or statements that might suggest

7 an answer to the deponent."  For example, during the deposition of Mr. Rao, Qualcomm's attorney

8 (Mr. Kays) repeatedly interjected speaking objections and instructions while IV's attorney (Mr.

9 Seeve) was attempting to ask his questions:



26 Ex. 17 at 12:23-13:1, 13:13-16, 23:10-22.  Mr. Kays similarly obstructed the deposition of Mr.

27 Aquil:

28 ████████████████████████████████████████████

Ex. 19 at 55:1-10.  It was also evident from the video that the witnesses would routinely pause to take cues from Qualcomm's off-camera in-house counsel.  Indeed, this off-camera coaching was so obvious that it was easy to determine where said counsel was sitting in the deposition room, without being told.

**H.    Qualcomm's continued recalcitrance forced the parties in both cases to seek a *second* extension of the discovery deadlines.**

The day after the Qualcomm depositions, and in light of Qualcomm's continued delay tactics and discovery failures, the parties in both the Lenovo and Zebra cases jointly moved to extend third-party discovery.  As the parties explained to the Western District of Texas court:

> [M]any of the disputed material issues in this litigation revolve around and depend upon discovery the parties must secure from third parties.  Unfortunately, one such third-party (Qualcomm), with information critical to the infringement claims for both of the patents in this case, has not yet fully complied with discovery requests to a degree that necessitates a revision to the current Scheduling Order.
>
> Each party served Qualcomm with subpoenas seeking documents, source code, and depositions more than half a year ago, and, in the interim, have diligently sought documents, source code and depositions from Qualcomm.  Qualcomm has not yet, however, completed its productions of documents and source code, nor have the parties been able to depose Qualcomm following the completed production.

Ex. 20 at 1.  The court granted the parties' motions and extended third-party discovery out to February 7, 2025.

**I.    Qualcomm has still not produced all of the relevant source code.**

Meanwhile, IV was continuing to press for the source code.  For example, on December 3, 2024, counsel for IV asked when the code would be ready for review.  Ex. 13 at 3 (email of Dec. 3, 2024 at 12:20 PM).[6]  Five months after IV served the subpoenas, counsel for Qualcomm responded that it was

---

[6]    Just today, counsel for Qualcomm complained that IV did not identify the subset of code it was willing to accept—as a compromise—until December 3, 2024.  Ex. 16 at 3 (email of Jan. 31, 2025 at 12:04 AM).  Qualcomm's complaint is misplaced, given that IV was only able to further narrow its requests after Qualcomm's (incomplete) document production in November.

1  ████████████████████████████████████████████████ *Id.* at 2 (email of

2  Dec. 6, 2024 at 8:36 PM).  Two weeks later, on December 20, 2024, counsel for Qualcomm stated

3  that Qualcomm ███████████████████████████████████████████████████████

4  █████████ Ex. 16 at 36 (email of Dec. 20, 2024 at 8:04 PM).[7]  Two weeks after that, on January 6,

5  2025, counsel for IV checked in again.  *Id.* at 25-26 (email of Jan. 6, 2025 at 11:45 AM).  Counsel

6  for Qualcomm responded ███████████████████████████ the following week; but,

7  ████████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████ *Id.* at 23

9  (email of Jan. 6, 2025 at 9:15 PM).  True to form, source code production is still not complete.  For

10 example, more than two weeks after the depositions, Qualcomm has not even produced █████

11 ████████████████████████████████████████[8]

12

13

---

14 [7]     Qualcomm has been promising to ████████████████████ since August 2024.
   *See* Ex. 10 at 2 (email of Aug. 11, 2024 at 10:58 PM).

15 [8]     Just today, counsel for Qualcomm ████████████████████████████████████

16 ████████████████████████████████████████████████████████████████

17 ██████████████ Ex. 16 at 3-4 (email of Jan. 31, 2025 at 12:04 AM).  It is unclear what
   more IV could have done.  Again, the witness testified that █████████████████████████

18 ██████ Ex. 18 at 26:20-23.  ████████████████████████████████████████████████

19 ██████████████████████

20  █      ████████████████████████████████

21  █      ██

22  █      ███████████████████████

23  ███████████████████████████████████████

24  █      █████████████████████████████

25  █      ██████████████████████████████████

26  ███████████████████████████████

27  █      █████████████████

28 *Id.* at 17:9-24.  In any event, ██████████████████ does not vitiate Qualcomm's obligation to
   produce, or at least identify, said code before today.



**J.    Qualcomm's continued recalcitrance forced the parties in both cases to seek a *third* extension of the discovery deadlines.**

In light of all of the above, counsel for IV insisted that Qualcomm complete its production of source code and provide at least one more witness on the topics for which Mr. Vajid had been designated. *Id.* at 16-17 (email of Jan. 23, 2025 at 8:40 AM). Counsel for Qualcomm responded on January 24, 2025, that ████████████████████████████████████████ ████████████████████████████████ *Id.* at 16 (email of Jan. 24, 2025 at 8:19 PM). Counsel for IV explained that ████████████████ was not good enough, given the six-month delay, and that the parties needed to know a date certain. *Id.* at 8-9 (email of Jan. 27, 2025 at 8:58 AM). Despite knowing that the third-party discovery deadline was February 7, 2025, *see id.* at 16 (email of Jan. 24, 2025 at 8:19 PM), counsel for Qualcomm responded that ████████████████████████████████:

████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████.

*Id.* at 8 (email of Jan. 28, 2025 at 7:57 PM). This, in turn, forced the parties in both cases to seek a third extension, this time pushing the entire remaining set of deadlines back by two months. That motion for an extension is in the process of being drafted at the time of this filing.

Due to the inherent delays of motions practice, and in light of Qualcomm's behavior, IV felt that it had no choice but to file this Motion. It might well be that after six months of delays, Qualcomm will indeed meet its current estimate for production of source code—even as it continues to refuse to provide a date for the subsequent depositions. Ex. 16 at 1-2. But, Qualcomm's assurances cannot be taken on faith; a court order is needed.

## III.    THE DISCOVERY REQUESTS AT ISSUE

IV's July 17, 2024, subpoenas in the Lenovo case included 15 topics for deposition and 15 document requests, including source code. Exs. 5-6. The Zebra case subpoenas included 12 topics for deposition and 12 document requests, including source code, which were subsets of the Lenovo

topics and requests.  *See* Exs. 3-4.  On September 3, IV narrowed its document requests in both cases to 10, again including source code.  *See* Exs. 11-12.

In an attempt to compromise and obtain *any* deposition testimony, in late December 2024 IV agreed to further narrow the deposition topics to:

- The functionality of the dynamic clock and voltage scaling in the Qualcomm chips within the accused products, including within the Kryo CPUs;

- The functionality of the package-on-package memory implementation in the Qualcomm chips within the accused products;

- The functionality of the Linux drivers for clock frequency and voltage regulation for the Qualcomm chips within the accused products;

- The functionality of the write-leveling/WCK2CK leveling, command-bus training, and WCK-DQ implementation in the Qualcomm chips within the accused products;

- The functionality of the implementation of OFDM packets under the 802.11n/ac/ax standards in the Qualcomm chips within the accused products, including but not limited to cyclic shifts.

Ex. 16 at 30-31 (email of Dec. 23, 2024 at 1:30 PM).  Qualcomm accepted these topics.  *Id.* at 30 (email of Dec. 24, 2024 at 2:23 PM).  The source code requested is simply that code which pertains to each of the above topics.  Ex. 15 at 3 (email of Dec. 3, 2024 at 12:20 PM) (narrowing source code requests).

## IV.    ARGUMENT

"Federal Rules of Civil Procedure 26 and 45 govern discovery from nonparties by subpoena."  *Bofi Fed. Bank v. Erhart*, 2016 WL 1644726, at *2 (S.D. Cal. Apr. 26, 2016); *see also Wi-Lan Inc. v. Research in Motion Corp.*, 2010 WL 2998850, at *3 (S.D. Cal. July 28, 2010) ("The general rules of discovery apply to subpoenas issued under Rule 45, including Fed. R. Civ. P. 26(b)(1) . . . .").  Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  "Proper subpoenas issued by attorneys on behalf of the court are treated as orders of the Court."  *McKeon v. Cent. Valley Cmty. Sports Found.*, 2019 WL 1208986, at *2 (E.D. Cal. Mar. 14, 2019) (collecting cases).  "A District Court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to

1  pass judgment on what constitutes relevant evidence thereunder.  Where relevance is in doubt . . .

2  the court should be permissive." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 681 (N. D. Cal. 2006)

3  (quoting *Truswal Sys. Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1206, 1210 (Fed. Cir. 1987).

4      "Once the propounding party establishes that the information sought is relevant, the party

5  opposing discovery has the burden of showing that the discovery should be prohibited, and the

6  burden of clarifying, explaining or supporting its objections." *Bofi*, 2016 WL 1644726, at *2; *see*

7  *also Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.,* 408 F.3d 1142, 1149

8  (9th Cir. 2005); *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999)

9  ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at

10  all.").

11      Rule 45(g) permits a court "for the district where compliance is required" to "hold in

12  contempt a person who, having been served, fails without adequate excuse to obey the subpoena or

13  an order related to it." Fed. R. Civ. P. 45(g).  Contempt sanctions are among a court's inherent

14  powers. *See Shillitani v. U.S.*, 384 U.S. 364, 370 (1966) ("There can be no question that courts

15  have inherent power to enforce compliance with their lawful orders through civil contempt.").

16      For all the electronic-ink that had to be spilled to explain the background of this matter, the

17  facts speak for themselves.  There can be no reasonable dispute that the narrowed deposition topics

18  are relevant; Qualcomm accepted those topics.  And, there can be no reasonable dispute that

19  Qualcomm's witnesses were unprepared and improperly coached during their depositions;

20  Qualcomm admitted that another witness is due.  Neither can there be any reasonable dispute that

21  the narrowed source code demanded is relevant; Qualcomm has never claimed otherwise.  Finally,

22  there can be no reasonable dispute that none of this should have taken seven months.  Despite

23  everything that Qualcomm might throw against the wall in opposition to this Motion, there is no

24  rational universe in which Qualcomm could still fail to produce a competent witness and code

25  correlated to the chips Qualcomm itself identified back in September.  *See* Ex. 7 at 10-11 (email of

26  Sept. 26, 2024 at 4:08 PM)

27      Again, consider Qualcomm's insistence that the plaintiff identify for Qualcomm the

28  Qualcomm-internal part numbers for the relevant chips, and further Qualcomm's assertion that

there was not a one-to-one correlation between the internal part numbers and the external marketing names.  After almost two months of back-and-forth, Qualcomm finally admitted that this was not true and with apparent ease provided a table correlating the marketing names with the internal part numbers.  *Id.*  Had Qualcomm cooperated from the beginning, or even at that point, the parties might well have avoided the three extensions requested of the Western District of Texas, not to mention a great deal of wasted time and costs.

## V.    CONCLUSION

For the reasons set forth above, IV respectfully requests that the Court order Qualcomm to immediately produce one or more witnesses actually prepared to testify on the identified topics; order Qualcomm's counsel to behave themselves during the deposition(s); order Qualcomm to immediately produce the requested source code; and order Qualcomm to pay all costs associated with the ordered depositions and source code review.

Dated: January 31, 2025                    Respectfully submitted,


                                           /s/ *Aaron S. Jacobs*
                                           Aaron S. Jacobs (Cal. Bar No. 214953)
                                           ajacobs@princelobel.com
                                           **PRINCE LOBEL TYE LLP**
                                           One International Place, Suite 3700
                                           Boston, MA 02110
                                           Tel: (617) 456-8000

                                           Attorneys for Plaintiffs

1

## PROOF OF SERVICE

2        I, Aaron S. Jacobs, declare:

3        I am a citizen of the United States and employed in Suffolk County, Massachusetts.  I am

4   over the age of eighteen years and not a party to the within entitled action.  My business address is

5   One International Place, Boston MA 02110.  On January 31, 2025, I caused to be served a copy of

6   the following document and its attachments:

7        **PLAINTIFFS' MOTION TO ENFORCE SUBPOENAS SERVED ON
         THIRD-PARTY QUALCOMM INCORPORATED**

8

9   by transmitting via electronic mail the document(s) listed above to the electronic email addresses

10  set forth below on this date.

11  David Kays
    MORGAN FRANICH FREDKIN

12  SIAMAS & KAYS LLP
    333 W San Carlos St #1050

13  San Jose, CA 95110
    dkays@mffmlaw.com

14
    Attorney for Qualcomm Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Steve R. Borgman
Texas State Bar No. 02670300
KILPATRICK TOWNSEND & STOCKTON LLP
700 Louisiana Street, Suite 4300
Houston, Texas 77002
Telephone: 281-809-4081
Facsimile: 281-990-6826
Email: sborgman@kilpatricktownsend.com

Michael T. Morlock
Richard W. Goldstucker
Mitchell G. Stockwell
Russell A. Korn
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Email: mmorlock@kilpatricktownsend.com
Email: rkorn@kilpatricktownsend.com
Email: rgoldstucker@kilpatricktownsend.com
Email: mstockwell@kilpatricktownsend.com

Kathleen R. Geyer (admitted pro hac vice)
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue Suite 3700
Seattle, WA 98101
Telephone: 206.516.3094
Facsimile: 206.299.3458
Email: kgeyer@kilpatricktownsend.com

Sarah Y. Kamran (admitted pro hac vice)
KILPATRICK TOWNSEND & STOCKTON LLP
1801 Century Park East Suite 2300
Los Angeles, CA 90067
Telephone: 310.310.7015

Facsimile: 310.861.0327
Email: skamran@kilpatricktownsend.com

ATTORNEYS FOR DEFENDANT
LENOVO GROUP LIMITED


Steve R. Borgman
KILPATRICK TOWNSEND & STOCKTON LLP
Texas State Bar No. 02670300
700 Louisiana Street, Ste. 4300
Houston, Texas 77002
281.809.4081 Telephone
281.990.6826 Facsimile
sborgman@kilpatricktownsend.com

Steven D. Moore
April E. Isaacson
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center, Ste. 1900
San Francisco, CA 94111
415.576.0200 Telephone
415.576.0300 Facsimile
smoore@kilpatricktownsend.com
aisaacson@kilpatricktownsend.com

Michael T. Morlock
Andrew N. Saul
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street NE, Ste. 2800
Atlanta, GA 30309
404.815.6500 Telephone
404.815.6555 Facsimile
mmorlock@kilpatricktownsend.com
asaul@kilpatricktownsend.com

Sarah Y. Kamran
KILPATRICK TOWNSEND & STOCKTON LLP
1801 Century Park East, Ste. 2300
Los Angeles, CA 90067
310.861.7015 Telephone
310.861.0327 Facsimile
skamran@kilpatricktownsend.com

ATTORNEYS FOR DEFENDANT
ZEBRA TECHNOLOGIES CORPORATION

January 31, 2025

*/s/ Aaron S. Jacobs*
Aaron S. Jacobs

# CERTIFICATE OF COMPLIANCE

I hereby certify that on December 23, 2024, counsel for both IV and Qualcomm conferred by videoconference pursuant to the requirements of Local Rule 26.1(b).  Although it appeared that the parties came to a compromise at that time, Qualcomm's failures in discovery and subsequent correspondence has established that the parties have reached an impasse on these issues.

/s/ *Aaron S. Jacobs*
Aaron S. Jacobs